**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

COMMON CENTS DISTRIBUTORS, LLC,

            Plaintiff,

  -against-

                                                         No. 20-cv-10369 (CM)

CURLS BEAUTY BRANDS, LLC,

            Defendant

---

### DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

McMahon, J:

Plaintiff, Common Cents Distributors, LLC, brings this action against Defendant, CURLS Beauty Brands, LLC ("CURLS"). Plaintiff alleges that Defendant filed a series of false complaints with Amazon, claiming that Plaintiff was infringing Defendant's intellectual property rights. The Complaint alleges that Defendant's statements were injurious to Plaintiff's business and thus constitute defamation and tortious interference.

Defendant moves to dismiss the complaint for lack of personal jurisdiction. Defendant contends that it cannot be sued in New York because there is no connection between it and the State of New York, or between the events upon which Plaintiff's claims are based and the State of New York.

Defendant's motion is GRANTED, and the complaint is dismissed without prejudice to its being filed in a jurisdiction having in personam jurisdiction over the defendant.

# BACKGROUND

## I. Factual Background

### A. The Parties

Plaintiff is a limited liability company incorporated in New Jersey, all of whose members reside in New Jersey. (Compl. ¶ 4). Plaintiff sells products throughout the United States, including New York, and is a third-party seller on Amazon.com. (*Id*; Dkt. No. 14).

Defendant is a Texas limited liability company that maintains its principal place of business at 124 Rose Lane, Frisco, Texas. (Compl. ¶ 5; Dkt. No 14). Defendant manufactures and sells hair care products throughout the United States, including in New York. (Compl. ¶ 5).

### B. Unauthorized Sales of "CURLS" Products Through Amazon

Plaintiff alleges that Defendant induced Amazon to restrict Plaintiff's ability to sell its products throughout the United States, including in New York, by repeatedly representing to Amazon that Plaintiff was listing and selling counterfeit CURLS products. (Compl. ¶¶ 12, 14, 22, 23, 26, 28).

At all times relevant to this lawsuit, Plaintiff owned and operated a merchant storefront on amazon.com, through which it sold thousands of products, conducting business throughout the United States. (Compl. ¶ 6; Dkt. No. 17). Included in its wares were products manufactured by Defendant. (Compl. ¶ 6). As required by Amazon's policy of assigning each product a unique Amazon Sales Identification Number, or "ASIN," Plaintiff joined the existing listing for Defendant's "Curls The Ultimate Styling Collection BN Control Curl Sculpting Gel." (Compl. ¶ 8–11). This product was assigned Amazon ASIN B084BY1BPM. (Compl. ¶ 10).

On or about March 15, 2020, Defendant filed a claim with Amazon, by email or other electronic means, stating that Plaintiff had listed and sold counterfeit products under ASIN

B084BY1BPM. (Compl. ¶ 12). As a result, Plaintiff was removed from the relevant ASIN by Amazon, such that Plaintiff could no longer sell Defendant's product. (Compl. ¶ 14).

On April 20, 2020, and again on April 27, 2020, Plaintiff advised Amazon that Defendant's accusation was not true and appealed the restriction on its account, citing New York's First Sale Doctrine. (Compl. ¶ 16). Shortly thereafter, on April 29, 2020, Defendant proposed to resolve the dispute between it and Plaintiff. (Compl. ¶ 18). Plaintiff agreed to Defendant's proposal in order to obtain withdrawal of the restriction on its account and to prevent any further financial harm. (Compl. ¶ 20). At some point between April 29, 2020 and May 17, 2020, Defendant withdrew its counterfeiting claim, leading Amazon to lift the constraint on Plaintiff's sales. (Compl. ¶ 21).

Despite the purported resolution of this situation, the same pattern of events occurred two more times. Defendant sent a notice to Amazon on May 17, 2020, and again on September 12, 2020, each time claiming that Plaintiff had listed and/or sold counterfeit products and/or products that infringed on Defendant's intellectual property rights. (Compl. ¶¶ 22, 26). Amazon twice more restricted Plaintiff's ability to engage in interstate commerce. Each time, Plaintiff notified Defendant of the falsity of its claims and demanded Defendant again withdraw its complaints. (Compl. ¶ 23, 24, 26). In each instance, Defendant withdrew its complaints, and Amazon promptly withdrew such limitations on Plaintiff's online account. (Compl. ¶ 25, 27).

Each allegedly false claim of counterfeiting was sent from Texas, Defendant's principal place of business, and arrived in Washington State, where Amazon is headquartered. (Compl. ¶ 13).

C.  *Procedural History*

Plaintiff filed the complaint in the present action on December 15, 2020. (Dkt. 1). On April 26, 2021, Defendant filed a notice and memorandum in support of a motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).

*D. Jurisdictional Facts*

The complaint and moving papers contain a number of allegations about Defendant's contacts with New York. Defendant is alleged to conduct, transact and solicit business in New York regularly, and to derive substantial revenue thereby. (Compl. ¶ 3). CURLS allegedly engages in acts that affect interstate commerce in New York by operating merchant storefronts on amazon.com and its own website, curls.biz. (*Id.*). Plaintiff contends that Defendant, through its online market platforms, systematically targets consumers in New York by delivering goods to, and accepting payments processed in, New York. (*Id.*). Further, Defendant has allegedly built a network of agents, partners, representatives and independent contractors, made up of a significant number of New York residents, through its "CURLS Partnership" and "CURLS Affiliate" programs. (*Id.*). Finally, Plaintiff asserts that Defendant is also a party to a distributorship agreement with Duane Reade, Inc., a New York corporation which operates stores exclusively in New York. (*Id.*).

## DISCUSSION

**II.   Legal Standard**

To survive a motion to dismiss for lack of *in personam* jurisdiction made pursuant to Federal Rule 12(b)(2), "a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006); *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010). In evaluating whether the Complaint meets this standard, the Court must construe all allegations in the light most favorable to the plaintiffs. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

The Supreme Court has made clear that personal jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). The court must conduct a two-part inquiry to determine whether to

exercise personal jurisdiction. "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). The inquiry thus requires the Court to determine "whether personal jurisdiction will lie" and then whether the exercise thereof "comports with due process protections established under the United States Constitution." *Licci*, 732 F.3d at 168; *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Defendant makes no claim here about whether the assertion of personal jurisdiction over it comports with Due Process.

Under Federal Rule 4(k)(1)(A), a federal district court sitting in diversity is permitted to exercise such personal jurisdiction as the forum state could exercise. This court applies New York law. New York's long-arm statute is CPLR § 302, which provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent…transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR § 302(a)(1). Any non-domiciliary "who in person or through an agent…commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act" is likewise amenable to personal jurisdiction under New York's long-arm statute, provided he regularly conducts business in the state. CPLR § 302(a)(3).

Plaintiff does not allege that Defendant is amenable to general jurisdiction in New York under CPLR § 301, and rightly so, as on the facts pleaded, any such argument is essentially precluded by the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Instead, Plaintiffs focus their argument on the issue of specific jurisdiction, and New York's long arm statute, CPLR § 302. It is to that statute that the court now turns.

### III. New York's Long-Arm Statute Does Not Provide a Basis for Personal Jurisdiction

*A. There Is No Jurisdiction under CPLR § 302(a)(1) Because Any Alleged New York Contacts Are Unrelated to Plaintiff's Claims*

Plaintiff principally asserts that personal jurisdiction exists over Defendant in New York pursuant to CPLR § 302(a)(1).

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 103 (2d Cir. 2006). In defamation claims, the first prong "requires more than 'mere defamatory utterances sent into the state' or 'the distribution of a libelous statement." *Bah v. Apple Inc.*, 2020 WL 614932 (S.D.N.Y. 2020). For the second, under New York law, "In order for a cause of action to 'arise out of' a party's activities in New York, there must be 'an articulable nexus,' or a 'substantial relationship,' between the claim asserted and the actions that occurred in New York. *Kronisch v. U.S.*, 150 F.3d 112, 130 (2d Cir. 1998) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40 (1988) and *McGowan v. Smith*, 419 N.E.2d 321 (1981)). In defamation cases, specifically, New York courts "consider[] whether a concrete relationship exists between the defamatory statements and the New York activity as well as whether the defamatory statements were 'written in or directed to New York.'" *Id.* (quoting *SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 405 (2012)).

As the basis for this Court to exercise personal jurisdiction over Defendant under CPLR § 302(a)(1), Plaintiff points to the fact that CURLS operates two highly interactive websites that offer merchandise for sale to consumers in New York and through which CURLS solicits business

relationships to engage authorized sales representatives. (Dkt. No. 17). Defendant does not dispute these allegations or claim that it does not transact business in New York; rather, it "proudly" admits that it does so. Instead, Defendant claims that such business is "immaterial" to the jurisdictional question, because Plaintiff's claims do not arise from CURLS' business activity in New York. (Dkt. No. 18).

Defendant is correct.

"In cases where claims have been dismissed on jurisdictional grounds for lack of a sufficient nexus between the parties' New York contacts and the claim asserted, the event giving rise to the plaintiff's injury had, at best, a tangential relationship to any contacts the defendant had with New York." *Sole Resort*, *supra*., 450 F.3d at 104. Though a causal link is not required "between the defendant's New York business activity and a plaintiff's injury" the legal claim must not be "completely unmoored" from Defendant's New York contacts and business transactions. *Licci*, 732 F.3d at 168–69.

Here, Defendant's allegedly defamatory allegations that Plaintiff was selling counterfeit merchandise do not arise out of Defendant's business activity, but rather out of the business activity of the New Jersey plaintiff. The allegedly actionable conduct – the defamation – consisted of a complaint, written by a Texas LLC and sent from Texas to a recipient in Washington, which concerned the business activities of a New Jersey corporation. Defendant's New York contacts may well be substantial, but they have nothing to do with the claims alleged in this complaint. No specific business that was transacted in New York is alleged to form the basis of the activity complained of, and no fact is alleged that makes Plaintiff's injury particularly salient in the forum State. The complaint is not about Defendant's business activities in New York, but about Defendant's allegedly tortious contacts with Amazon.

As Defendant suggests, this case is quite like *Real Selling Group LLC v. ESN Group, Inc.*, 2021 WL 535748 (S.D.N.Y. 2021), in which this Court refused to exercise personal jurisdiction over a California corporation in a suit asserting claims of tortious interference and defamation. There, as here, the plaintiff's claims were based on alleged complaints made by the defendant to Amazon concerning the sale of counterfeit versions of the defendant's product. *Id.* This Court found no articulable nexus between the defendant's sales in New York and the plaintiff's claims, which arose out of complaints about counterfeiting that were made by a California Defendant to Amazon in Washington. *Id.* at *6. Plaintiff does not even try to distinguish this case. Instead, it argues that Defendant's tortious acts and its New York business transactions "are inextricably intertwined" because Defendant's intention in sending the defamatory complaints to Amazon was to regain control of the market for its goods "in New York and elsewhere." (Dkt. No. 17).

But in *Real Selling*, my colleague Judge Buchwald held that the desire to eliminate competition in the forum state is insufficient to create long arm jurisdiction under New York's long-arm statute:

> To the extent that the purpose of [defendant's] conduct as alleged in [plaintiff's] complaint was to protect [defendant's] business interest, that interest was not limited to New York, but instead extended anywhere – presumably the entire country – where [plaintiff] could offer [defendant's] products.

*Id.* Defendants tortious activity, which took place outside of New York, and Plaintiff's claim based thereon simply "did not arise from the defendants' specific business transactions in New York." As a result, the required substantial nexus is absent. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 250 (2d Cir. 2007).

### B. There Is No Jurisdiction under CPLR § 302(a)(3) Because All of Plaintiff's Claims Sound in Defamation

Defendant also argues that it is not subject to personal jurisdiction because another provision of the long arm statute, CPLR § 302(a)(3), exempts causes of action for defamation from the scope

of New York's long-arm jurisdiction. See, *Best Van Lines*, 490 F.3d at 244–45. This exception was "deliberately inserted [into the long-arm statute] to keep the provision well within constitutional bounds" by avoiding unwarranted infringements on defendants' freedom of speech or the press. *Ingraham v. Carroll*, 687 N.E.2d 1293, 1294–95 (1997); *Legros v. Irving*, 38 A.D.2d 53, 55 (1st Dep't 1971).

Plaintiff argues that the defamation exemption does not bar its suit, relying on *Seldon v. Direct Response Technologies, Inc.* 2004 WL 691222 (S.D.N.Y. 2004) for the proposition. But the court in *Seldon* explicitly held that "neither section 302(a)(2) or 302(a)(3) may be invoked to support jurisdiction in defamation actions." *Seldon, supra.,* 2004 WL 691222 at *5. In other words, *Seldon* supports Defendant's view of the long arm statute, not Plaintiff's.

Nor does the fact that Plaintiffs assert a claim for tortious interference with contract get around the defamation exemptions. It is well settled that, "Plaintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation." *Cantor Fitzgerald, L.P., v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996). In *Cantor*, the Second Circuit held that plaintiff's claims of injurious falsehood and tortious interference with prospective economic advantage fell within the section 302(a)(3) exemption to long-arm jurisdiction because, "the entire complaint sound[ed] in defamation." *Id.* In *Bah v. Apple Inc.*, this Court concluded that, "A claim sounds in defamation if, after 'looking for the reality and the essence of the [claim] and not its mere name,' the court finds it to be 'based upon [the] alleged defamatory statements.'" *Bah*, *supra*, 2020 WL 614932 at *6 (quoting *Findlay v. Duthuit*, 446 N.Y.S.2d 951, 953 (1st Dep't 1982) and *Cantor Fitzgerald*, 88 F.3d at 157).

It is clear from the pleadings that each of Plaintiff's claims, including its claim for tortious interference, arise out of Defendant's allegedly false complaints to Amazon -- exactly as was the

case in *Real Selling Group LLC*, where this Court found the § 302(a)(3) exemption to be applicable.

### C. There Is Also No Jurisdiction under CPLR § 302(a)(3) Because the Site of Any Purported Injury Was Not in New York

While it is not necessary to reach any of Plaintiff's other arguments, it bears noting that personal jurisdiction under CPLR § 302(a)(3) is lacking because the Plaintiff suffered no injury in New York.

Under CPLR § 302(a)(3), "courts determining whether there is injury in New York sufficient to warrant [personal] jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999) (quoting *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683 (2d Dep't 1987)). This "original event" is said to occur "where the first effect of the tort that ultimately produced the final economic injury is located." *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84–85 (2d Cir. 2001). "The key question in this analysis is the timing and location of the initial injury, as distinct from both the tortious act itself and from damages suffered later due to derivative effects of the initial injury." *Doe v. Delaware State Police*, 939 F.Supp.2d 313, 327 (S.D.N.Y. 2013). Though it would appear that Plaintiff's final economic injury occurred in New Jersey, where Plaintiff is located, this does not beg the conclusion that the "original event which caused the injury" occurred there, as well. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999). For purposes of CPLR § 302(a)(3), the New Jersey Plaintiff is injured not where it feels a loss of business, but where Defendant's tort has its first effect, ultimately leading to such loss of business. *DiStefano*, 286 F. 3d at 84–85.

The "first effect" of Defendant's tortious activity was the removal of Plaintiff from the CURLS ASIN. (Compl. ¶ 13). Though this action was taken in an online forum by Amazon, "permitting

[Plaintiff] to sue in any of the fifty states in which it does business would obviously be unfair to the defendant." *Spectacular Promotions, Inc. v. Radio Station WING*, 272 F.Supp. 734, 737 (E.D.N.Y. 1967).

The governing principles of *in personam* jurisdiction remain applicable in the context of the internet. *Penguin Group (USA), Inc. v. American Buddha*, 2013 WL 865486, at *6 (S.D.N.Y. 2013). "It is settled New York law that the suffering of economic damages in New York is insufficient, alone, to establish a 'direct' injury in New York for N.Y. CPLR § 302(a)(3) purposes." *Penguin Grp.*, 609 F.3d at 38. Plaintiff fails to allege any direct injury, economic or otherwise, it suffered in New York as a result of Defendant's tortious activity. By using phrases such as "including in New York" throughout its claims, Plaintiff practically admits that New York is merely among a class of states in which it does business, not *the* situs of some major injury forming the basis of its complaint.

## CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss for lack of personal jurisdiction in New York is GRANTED. Dismissal is obviously without prejudice; Plaintiff is free to refile this lawsuit in a jurisdiction where Defendant is amenable to suit.

The Clerk of Court is respectfully directed to remove the motion at Docket Number 12 from the Court's list of open motions and to close this case.

Dated: September 15, 2021

_____
United States District Judge

BY ECF TO ALL COUNSEL